Dr. Gerald L. **HURST**, Appellant,

v.

Richard W. **FORSYTHE**, Appellee.

No. 8641.

Court of Civil Appeals of Texas, Texarkana.

May 29, 1979.

Rehearing Denied June 26, 1979.

James O. Guleke II, Daugherty, Kuperman, Golden, Carlisle & Morehead, Austin, John O. MacAyeal, Dallas, for appellant.

Don T. Cates, John D. Gilliland, Gilliland, Cates, Flagg & Rowton, Royal Brin, Jr., Patrick McGowan, Strasburger & Price, Dallas, for appellee.

HUTCHINSON, Justice.

This is a suit for damages for the alleged breach of a written contract. Appellant Hurst was plaintiff and Appellee Forsythe was defendant in the trial court and will be so designated here.

Plaintiff has a Doctor of Philosophy degree in chemistry and is a recognized specialist in the field of explosive chemistry. Defendant has had considerable experience in marketing explosives. In September of 1969, plaintiff and defendant entered into a written "work contract" agreement wherein the formation of a corporation for the production and marketing of explosives was contemplated. In this endeavor, plaintiff was to be employed as a research scientist for a period of two years at a salary of $26,000.00 the first year and $30,000.00 the second year. Further, plaintiff was to receive by purchase or option to purchase a minimum of 100,000 shares of the corporation's common stock. In return, plaintiff was to be available at the corporation facilities for a minimum of ten hours per week to design and set up a chemistry laboratory and to direct the day-to-day activities of a certain forty hour per week employee.

On January 12, 1970, the proposed corporation, Kinetics International Corporation (KIC), held its incorporation meeting with the defendant being elected its president. Thereafter, defendant met with the plaintiff relative to their September 1969 agreement. At this time plaintiff was told that the number of shares allocated to him had been reduced to 70,400 because the number of authorized shares was less than originally contemplated. Plaintiff insisted upon receiving 100,000 shares and a compromise agreement was entered into and reduced to writing by the defendant. Under this agreement plaintiff was to receive 8700 additional shares and the defendant promised to ". . . exhibit best efforts to secure for Hurst from the KIC board an additional 33,000 shares of common within approximately one year . . . with such efforts by Forsythe wholely (sic) dependent upon the performance, relationship with Forsythe, and results of Hursts (sic) work during his first year of employment with such efforts by Forsythe to continue as long as feasible."

February 23, 1970, plaintiff signed an employment contract with KIC which provided he would receive 70,400 shares of common stock. This 70,400 shares and an additional 8700 shares were received by plaintiff.

On March 20, 1973, plaintiff, defendant and other stockholders of KIC entered into a stock acquisition agreement with The Tyler Corporation. In the agreement plaintiff made the representation that there were no commitments relating to authorized and unissued shares of stock of KIC and that he had no beneficial interest in or option on any shares other than the 79,100 shares which he owned.

After the acquisition of the stock of KIC by The Tyler Corporation, this suit was instituted for the recovery of the value of 33,000 shares of KIC stock and for damages for the failure of plaintiff to receive a raise in salary for the second year of his employment.

Trial was to a jury and all submitted issues were answered in favor of the plaintiff. By its answers the jury found that the defendant had agreed to exhibit his best efforts to secure the additional 33,000 shares by approximately one (1) year from February 1, 1970; that such agreement was dependent upon plaintiff's work performance and relationship with defendant during the first year; that plaintiff satisfactorily performed under such agreement and in his relationship with defendant; that

plaintiff produced satisfactory results during the first year; that defendant failed to use his best efforts to secure the 33,000 shares; that defendant agreed to hire plaintiff at a salary of $26,000.00 the first year and $30,000.00 the second year; that plaintiff satisfactorily performed under the agreement and in his relationship with defendant and produced satisfactory results during the first year; that defendant failed to use his best efforts to secure a salary increase for plaintiff; that the sum of $198,248.90 would compensate the plaintiff for defendant's failure to use his best efforts to obtain for plaintiff an additional 33,000 shares; and that the sum of $4,000.00 would compensate plaintiff for defendant's failure to obtain an increase in salary for the second year.

Thereafter, the court disregarding the jury answer to Special Issue No. 17 (the sum of $198,248.90) entered judgment for the plaintiff for the sum of $4,000.00. From this judgment plaintiff has perfected his appeal.

Plaintiff by his trial petition and proffered testimony (Bill of Exception) sought to recover damages based upon the projected value of the 33,000 shares of KIC stock as of the time of trial (May 1977). The trial court refused to permit the plaintiff to testify, before the jury, as to the projected current value of the 33,000 shares but did permit him to testify as to value of such shares as of the time of the sale to The Tyler Corporation (March 1973). In response to this inquiry the plaintiff stated that the 33,000 shares of stock were then worth $198,248.90, the sum found by the jury in its answer to Special Issue No. 17. Plaintiff offered no evidence of the value of the stock at any other time and there is no other evidence thereof. The record does reflect that KIC suffered considerable financial losses during the fiscal years of 1970, 1971, and 1972 and that during this period its stock was of little value.

Plaintiff here contends that he should have been permitted to testify before the jury as to the value at the time of the trial of the additional 33,000 shares of stock and

alternatively, that the court erred in disregarding the jury finding that the sum of $198,248.90 would compensate him for the defendant's failure to use his best efforts to obtain the additional shares. Resolution of these points turns upon the determination of the proper time to be used in arriving at plaintiff's damage. Appellant contends that the correct measure of his damage was the highest market value of the 33,000 shares between the date of the breach by defendant and the date of the trial. In support of this contention, the plaintiff relies upon the cases of *Randon v. Barton*, 4 Tex. 289 (1849), and *Calvit v. McFadden*, 13 Tex. 324 (1855). These cases stand for the proposition that where the entire purchase price has been paid in advance, the measure of damage is the highest price obtainable for the item purchased from the date of breach to the date of trial if the suit is brought and tried in a reasonable time. This rule was thereafter limited to the fact situations presented by those cases. See *Heilbroner v. Douglass*, 45 Tex. 402 (1876), where the court quoted from *Randon v. Barton*, supra, the following:

"But we doubt the propriety of giving the vendee in all cases, as a measure of damages, the highest price of the article between the day when it should have been delivered and the day of trial. If he immediately, or without any unreasonable delay, commence and prosecute his action, we think it just and proper that the fluctuations in price should be exclusively at the hazard of the defendant, the plaintiff having done everything in his power to have the contract settled and adjusted, and which is prevented solely by the laches or default of the defendant.",

and then stated:

". . . when extraordinary circumstances have occurred to produce extreme prices in the article during a long period of time, and the suit has been protracted without any fault of the defendant, . . . or when there are other circumstances attending the transaction, not in the ordinary course of trade, calculated to render

such a measure of damages inequitable and unjust, the rule of the highest price in the intervening time would not be applicable, but the ordinary rule might be more appropriate, which is to allow the value of the article at the time agreed on for delivery, and interest on that amount."

The *Calvit* rule has also been examined and limited in *Thrift Oil & Gas Co. No. 2 v. Newton*, 227 S.W. 495 (Tex.Civ.App. Amarillo 1921, no writ).

Here the plaintiff waited approximately two years after the date of the claimed breach before the institution of his suit. At this time it was impossible for the defendant to obtain the stock and thereby fulfill his contract. The additional shares were to have been obtained by February of 1971 and the KIC shares of stock were sold to The Tyler Corporation in March of 1973. This suit was instituted thereafter with the jury verdict being returned on May 5, 1977. Under the facts here presented, the *Calvit* rule is not applicable and the trial court did not err in refusing to admit the proffered evidence.

The only evidence in the record upon which the jury could have based its answer to Special Issue No. 17 was the plaintiff's testimony as to what The Tyle Corporation contracted to pay for the KIC stock in March of 1973, a time two years subsequent to the alleged breach by the defendant. Plaintiff offered no evidence as to the value of the shares of stock as of February of 1971. Here, as in the trial court, the plaintiff bases his claim for damages for breach of a contract rather than upon the tort theory of conversion, and does not seek to sustain the jury's answer to Special Issue No. 17 on a conversion theory. No effort has been made in the trial court or here to show a conversion of the shares of stock accompanied by fraud, willful wrong, or gross negligence so as to invoke the holdings of *Patterson v. Wizowaty*, 505 S.W.2d 425 (Tex.Civ.App. Houston-14th Dist. 1974, no writ); *Ligon v. E. F. Hutton & Company*, 428 S.W.2d 434 (Tex.Civ.App. Dallas 1968, writ ref'd n.r.e.); *Reed v. White, Weld & Company, Inc.*, 571 S.W.2d 395 (Tex.Civ. App. Texarkana 1978, no writ).

We therefore hold that the trial court did not err in disregarding the jury's answer to Special Issue No. 17. *Lindop v. Allstate Ins. Co.*, 542 S.W.2d 250 (Tex.Civ.App. Texarkana 1976, writ ref'd n. r. e.); Tex.R. Civ.P. 301; 4 McDonald's, Texas Civil Practice, § 17.32 (1971).

Appellee's cross points of error have been considered and are overruled.

Judgment of the trial court is affirmed.