**Dennis L. MIGA, Appellant and Appellee,**

v.

**Ronald L. JENSEN, Appellee and Appellant.**

**No. 2–98–043–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 3, 2000.

Thompson & Knight, P.C., Scott Patrick Stolley, P. Jefferson Ballew, Leasa M. Stewart, Dallas, for Appellant (Miga).

Shannon, Gracey, Ratliff & Miller, L.L.P., Anne Gardner, Steven J. Graham, Fort Worth, Mayer, Brown & Platt, William H. Knull, III, Susan K. Pavlica, Houston, Law Offices of J. Michael Jaynes, J. Michael Jaynes, Irving, for Appellee (Jensen).

PANEL A: CAYCE, C.J.; LIVINGSTON and RICHARDS, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

## I. INTRODUCTION

This dispute arises from Ronald Jensen's refusal to honor his employee Dennis Miga's option contract to purchase stock. Miga sued Jensen for breach of contract and fraud. The trial court disregarded the jury's fraud and punitive damages findings and awarded only contract damages. We will affirm in part, reverse and render in part, and reverse and remand in part.

## II. FACTUAL BACKGROUND

Ronald Jensen is an entrepreneur and investor who made his fortune primarily in the insurance business. Dennis Miga is a business executive with experience in telecommunications.

Jensen hired Miga in 1990 to run a new long-distance telephone company called Matrix Telecom. In addition to his salary, Miga was given a 6% ownership interest in the company. Matrix Telecom sold long-distance service using the 5,000 agent field force of Jensen's insurance agency. In 1992, Matrix Telecom became a wholly owned subsidiary of Matrix Communications, and Miga's 6% interest was converted into a 4.8% interest in the new parent company.

In 1992, Miga introduced Jensen to the principals of a start-up international telephone company called Pacific Gateway Exchange ("PGE"). PGE handles international calls for other long-distance companies. In October 1992, Jensen invested in PGE, paying $850,000 for an 80% interest.

In December 1992, Jensen persuaded Sprint to route all of Matrix Telecom's international traffic through PGE. In July 1993, Jensen gave Miga an oral option to buy PGE stock. Thereafter, Miga acquired two more major clients, WilTel and Telegroup, and together with Sprint they comprised 70 to 75% of PGE's business.

On Sunday, December 4, 1994, Miga sent Jensen a fax stating he intended to resign and that he wanted to "settle his account." When he arrived at the office the next day, Jensen presented him with a termination agreement. According to Miga, Jensen said he wanted Miga gone that day and threatened to fire Miga and ruin his reputation in the telecommunications industry if Miga did not sign the termination agreement. Jensen disputes that he threatened Miga and claims that the meeting was amicable.

The termination agreement set forth Miga's severance package. However, it did not expressly address Miga's option to purchase PGE stock. Miga testified that before he signed the agreement, he told Jensen he wanted to exercise his PGE option, but Jensen refused and assured him that the agreement did not affect the option and that they would deal with the option later. Conversely, Jensen claims that the agreement contained a mutual release of all claims and rights of either party, including Miga's right to exercise the option.

During the next nine months, Miga tried to exercise the option three more times. Each time, Jensen refused, claiming that Miga had released the option.

PGE made an initial public offering approximately eighteen months after Miga resigned. Before the offering, PGE's stock split 940 to 1. It initially sold for $12 per share, reached a high of $45.75 per share, and was worth $35.75 per share at the time of trial.

Miga sued to recover for Jensen's refusal to perform the option. At trial, Jensen conceded that Miga had an option, but disputed the terms. Miga claimed that under the option, he could buy 4.8% of Jensen's interest in PGE at Jensen's original cost and that there was no expiration date for the option. Jensen testified at trial that the option was effective January 1, 1993 and terminated on December 31, 1994. He claimed the price was on a graduated basis, with a specific dollar amount per share, and was subject to a buy-back if Miga left the employ of a Jensen-related affiliate. Jensen testified in his deposition, however, that he did not recall discussing any option terms with Miga.

The jury found that the termination agreement did not release the option; that Miga did not fail to timely and properly exercise the option; that Jensen breached the option, without excuse; and, that Jensen knowingly committed common-law and statutory fraud. The jury awarded a total of $18,810,086 in contract damages, which included $1,034,400 for breach of contract damages as of the date of Miga's resignation and $17,775,686 for lost profits. The same amounts were awarded for fraud damages. The jury also awarded $43 million in punitive damages. After verdict, the trial court partially granted Jensen's motion for judgment notwithstanding the verdict, disregarded the jury's fraud findings and punitive damages award, and entered judgment for actual contract damages, plus attorney's fees and interest. Both parties challenge the trial court's judgment on appeal.

### III. MIGA'S FRAUD ISSUES

■ Miga characterizes his "overarching issue" on appeal as whether the trial court erred in partially granting Jensen's

motion for judgment notwithstanding the verdict and in denying Miga's request for a judgment for fraud and punitive damages. Because the trial court stated no reason why it partially granted a judgment notwithstanding the verdict, and the motion presented multiple grounds on which Jensen argued such judgment should have been granted, Miga has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion. *See Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex. 1991).

█ A trial court may disregard a jury's verdict and render a judgment notwithstanding the verdict, also known as a judgment non obstante veredicto (n.o.v.), if there is no evidence to support the jury's findings necessary to liability, or if a directed verdict would have been proper. *See* Tex.R. Civ. P. 301; *Brown v. Bank of Galveston,* 963 S.W.2d 511, 513 (Tex.1998); *Sbrusch,* 818 S.W.2d at 394. A directed verdict is proper only under limited circumstances: (1) a specified defect in the opponent's pleading makes it insufficient to support a judgment; (2) the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; and (3) the evidence is insufficient to raise a fact issue that must be established before the opponent is entitled to judgment. *See Boswell v. Farm & Home Sav. Ass'n,* 894 S.W.2d 761, 768 (Tex.App.—Fort Worth 1994, writ denied); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). In determining whether there is no evidence to support the jury verdict, we consider the evidence in the light most favorable to the verdict and reasonable inferences that tend to support it. *See Bank of Galveston,* 963 S.W.2d at 513.

█ Jensen asserted in his motion for judgment notwithstanding the verdict that the evidence is legally insufficient to support the jury's fraud findings. To recover for fraud, a plaintiff must establish each of the following elements: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that the plaintiff acted in reliance upon the representation; and (6) that he thereby suffered injury. *See Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 929–30 (Tex.1996); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688–89 (Tex.1990) (op. on reh'g), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex. 1977). When the alleged fraud involves a promise to do an act in the future, the plaintiff must also prove that, at the time the defendant made the promise, he had no intention of performing. *See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992); *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 597 (Tex.1992).

Miga argues that breach of the promise to perform, coupled with slight circumstantial evidence of fraud, is sufficient to support a finding of fraudulent intent. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998) (op. on reh'g); *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986). The circumstantial evidence relied on must be relevant to Jensen's intent at the time the promise was made. *See Formosa Plastics Corp.,* 960 S.W.2d at 48; *Spoljaric,* 708 S.W.2d at 434.

█ Jensen never denied that he had promised Miga an option to purchase PGE stock, even though he did dispute the option terms. Contrary to Miga's assertions, a dispute about contract terms does not amount to a denial that an agreement exists. *See Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.,* 849 S.W.2d 380, 389 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Acoustical*

*Screens in Color, Inc. v. T.C. Lordon Co.,* 524 S.W.2d 346, 348–49 (Tex.Civ.App.— Dallas 1975, writ ref'd n.r.e.). The evidence shows that Jensen orally acknowledged the option and he consistently asserted that the option had been released by the termination agreement. Miga also argues that Jensen did not intend to share his PGE stock after it became apparent the stock was valuable. But Jensen gave options identical to Miga's to his children and Chuck Taylor and he performed under those options. His refusals to perform under the option for Miga, after Miga resigned, is not evidence that he did not have the intent to perform at the time he made the promise. The evidence is legally insufficient to show that when Jensen gave Miga the option, he did so with the intent to deceive and with no intent of performing as represented. Instead, the evidence shows that Jensen later changed his mind.

We overrule Miga's issues because there is no evidence of fraud. Consequently, we need not address Jensen's cross-points.

## IV. JENSEN'S CONTRACT ISSUES

### A. Contract Terms Definite Enough to be Enforceable

■ In his first issue, Jensen asserts that the oral option agreement found by the jury is too indefinite to be enforceable because it fails to specify either (1) a particular date or event that would allow the court to determine the number of shares the parties intended Miga to have an option to purchase or (2) the date it would expire.

■ A contract is not enforceable unless the court can determine the parties' legal obligations and liabilities. *See America's Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 622 (Tex.App.—San Antonio 1996, writ denied); *Pennington v. Jerry F. Gurkoff, D.O., P.A.,* 899 S.W.2d 767, 770 (Tex.App.—Fort Worth 1995, writ denied). "Where the evidence shows that the parties intended to enter into an agreement, the courts should find the contract to be

definite enough to grant a remedy. . . ." *America's Favorite Chicken Co.,* 929 S.W.2d at 623. If the agreement provides a standard to be applied in determining an element of the contract, the contract is sufficiently definite to be enforceable. *See Cap Rock Elec. Coop. v. Texas Util. Elec. Co.,* 874 S.W.2d 92, 100 (Tex.App.—El Paso 1994, no writ). Contract terms that at first appear to be uncertain "are often readily made clear and plain by the aid of common usage and reasonable implications of fact." *Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex.1966). Moreover, courts construe an option contract in favor of the buyer in order to give the option effect; otherwise, the option would be rendered meaningless. *See KMI Continental Offshore Prod. Co. v. ACF Petroleum Co.,* 746 S.W.2d 238, 241–42 (Tex.App.—Houston [1 st Dist.] 1987, writ denied).

Jensen purchased 80% of PGE's preferred stock, which was later converted to common stock, for $850,000. There is evidence that under the terms of the option, Miga was entitled to purchase 4.8% of whatever Jensen purchased from PGE at the same price Jensen paid for it. Thus, the parties linked the quantity term to the stock that Jensen received in exchange for his $850,000. Furthermore, Jensen admitted that he gave his children and one other employee, Chuck Taylor, options that were identical to the one he gave Miga. In December 1994, the same month in which Miga first attempted to exercise the option, Jensen performed the options for his children and Taylor. By doing so, he demonstrated that the quantity term was definite enough to be enforceable.

■ Jensen also contends that the option is not enforceable because it lacks a duration term. However, courts will imply a requirement that the option be exercised within a reasonable time. *See id.* at 243. Jensen testified that the option was open until December 31, 1994, and Miga attempted to exercise the option on December 5, 1994. Under Jensen's own theory, the contract was not indefinite as to dura-

tion because Miga attempted to exercise the option within the time frame Jensen claimed was reasonable. The subsequent attempts to exercise the option were also within a reasonable time because the delays were caused by Jensen's refusal to perform. We overrule Jensen's first issue.

### B. Lost Profits is the Proper Measure of Damages

Jensen challenges that portion of the trial court's contract damages award based on lost profits because he asserts lost profits is an improper measure of damages. The trial court submitted a two-part contract damages question:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dennis Miga for his damages, if any, that resulted from Ronald Jensen's failure to comply with their agreement, if any?

. . . .

(a) The difference between the cost to exercise the stock option contract per the parties [sic] agreement, if any, and the value of the stock in December, 1994, if any.

**Answer: $1,034,400.00**

(b) Lost Profits to Dennis Miga that were a natural, probable, and foreseeable consequence of Ronald Jensen's failure to comply with the agreement, if any.

**Answer: $17,775,686.00**

### 1. Error was Preserved

Miga claims Jensen waived this issue because Jensen did not raise that objection during the charge conference. We disagree.

Texas Rule of Civil Procedure 274 provides: "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in the pleading, is waived

unless specifically included in the objections." TEX.R. CIV. P. 274. According to the supreme court, "[t]here should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) (op. on reh'g); *see also Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999); *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex.1999).

During the charge conference, Jensen's attorney twice asserted that Miga was limited to only his actual damages, the stock price on the date of breach, and was precluded from recovering consequential damages, his lost profits. The trial court was aware of Jensen's improper-measure-of-damages complaint and even interrupted Jensen's counsel when it was asserted the second time, stating, "you've got your objection on the record." Jensen also raised this objection in his motion for judgment notwithstanding the verdict. Thus, the record demonstrates that Jensen preserved this complaint.

### 2. Lost Profits Necessary for Full Recovery

██ Jensen's second issue on appeal asserts that lost profits is not the proper measure of contract damages because he claims Miga's recovery should be limited to the stock value at the time Miga resigned. Conversely, Miga claims that he was entitled to lost profits attributable to the increase in stock value between the time of the contract breach and trial.[1]

The Texas Supreme Court long ago determined that the "true measure of damages" for breach of a contract to deliver property with fluctuating value, such as stock, is "that which will completely indemnify the plaintiff for breach of the contract." *Heilbroner v. Douglass*, 45

---

1. The trial court submitted a contract measure of damages that neither party requested.

Tex. 402, 408 (1876); *see also Randon v. Barton*, 4 Tex. 289, 295 (1849). It formulated the general rule in such cases that where the purchase price was paid in advance, the measure of damages is the highest price obtainable for the item purchased from the date of breach to the date of trial, but if the purchase price was not paid in advance, the measure of damages is limited to the value of the property on the date of breach. *See Calvit v. McFadden*, 13 Tex. 324, 325 (1855); *Randon*, 4 Tex. at 295. The supreme court explained that by paying in advance, the nonbreaching party will have diminished his ability to mitigate damages by purchasing the same stock at "equally advantageous terms" on the open market. If he has not paid in advance, however, it is assumed he is at no disadvantage to minimize his loss by replacing the property that was not delivered. *See Calvit*, 13 Tex. at 325–26; *Randon*, 4 Tex. at 293–94. The supreme court later explained that the measure of damages stated in *Randon* and *Calvit* would not be applied indiscriminately in cases where the justice of the case did not demand it. *See Heilbroner*, 45 Tex. at 407; *see also Hurst v. Forsythe*, 584 S.W.2d 314, 316–17 (Tex. Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Thrift Oil & Gas Co. No. 2 v. Newton*, 227 S.W. 495, 496 (Tex.Civ.App.—Amarillo 1921, no writ).

Jensen emphasizes the paid-in-advance distinction, arguing that Miga is limited to the stock price on the day the contract was breached because he had not paid in advance, but ignores the reasons behind it. In this case, it was impossible for Miga to replace the stock within a reasonable time after Jensen failed to deliver because the stock was not publicly traded at the time of the breach. When the stock later went public, Miga could not afford to pay the $12 per share opening price. Under the circumstances here, it would be unjust to limit Miga's recovery to the stock price on the date of breach. *See Gallagher v.*

*Jones*, 129 U.S. 193, 200, 9 S.Ct. 335, 337, 32 L.Ed. 658 (1889) (limiting damages to date stock was converted would "afford a very inadequate remedy" and be "unjust"). Jensen willfully withheld the PGE stock from Miga and Miga could not cover his loss; therefore, the risk of price fluctuations should fall on Jensen. *See Heilbroner*, 45 Tex. at 407; *see also Pidcock v. Sunnyland America, Inc.*, 854 F.2d 443, 446 (11 th Cir.1988) ("It is more appropriate to give the [nonbreaching] party the benefit even of windfalls than to let the [breaching] party keep them."). Thus, the trial court's contract damages question submitted the proper measure of damages because the only measure of damages that would make Miga whole includes his lost profits. We overrule Jensen's issue two.

### 3. Sufficient Evidence of Lost Profits

■ In his third issue, Jensen asserts the evidence is legally and factually insufficient to support the lost profits finding because there is no evidence Miga would have sold the stock at the time of trial or that lost profits were foreseeable, reasonably certain, or causally related to the breach. In his fifth issue, Jensen asserts that the trial court erred in admitting evidence of the stock's value as of the time of trial.[2]

In determining a "no-evidence" issue, we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim

---

**2.** The parties introduced evidence of the PGE stock's value at different times, including the time of the breach and the time of trial, as

well as its highest value. The jury based its lost profits award on the stock value at the time of trial.

is sufficient as a matter of law. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

A "no-evidence" issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court· is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharm.*, 953 S.W.2d at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *See Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

Jensen's argument is based on the contention that there is no evidence Jensen would have sold the stock at the time of trial. Under *Randon* and its progeny, however, a plaintiff may recover the highest intermediate fair market value without any proof that the plaintiff would have actually sold the property. *See Heilbroner*, 45 Tex. at 406–07; *Calvit*, 13 Tex. at 324–26; *Randon*, 4 Tex. at 293; *Hurst*, 584 S.W.2d at 316–17; *Thrift Oil & Gas Co.*, 227 S.W. at 497. This is consistent with federal court determinations that in the securities investment context, profits include unrealized or paper profits. *See Crawford v. Glenns, Inc.*, 876 F.2d 507, 511 (5th Cir.1989); *Gerstle v. Gamble–Skogmo, Inc.*, 478 F.2d 1281, 1305 (2nd Cir. 1973). Because Jensen's wrongful conduct prevented Miga from having the stock, Jensen should bear the uncertainty of whether Miga would have held or sold the stock. Consequently, Miga was not required to show that he would have sold the stock at the time of trial or at any other specific time.

 As a general rule, an injured party may recover for lost profits by showing that the loss is a natural and probable result of the act or omission complained of and that the amount of profits the party would have earned is reasonably certain. *See Orchid Software, Inc. v. Prentice–Hall, Inc.*, 804 S.W.2d 208, 210 (Tex. App.—Austin 1991, writ denied) (op. on reh'g). The precise calculation of anticipated profits is not required. *See Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994); *Orchid Software, Inc.*, 804 S.W.2d at 211.

 In this case, both parties anticipated that PGE would be profitable and would eventually go public. Jensen even testified that he gave PGE options to his children so he could avoid estate taxes, which would not have been necessary if he did not foresee that the PGE stock price would escalate. Likewise, the profits were reasonably certain. PGE stock was listed on the Nasdaq and the daily stock prices were in evidence. Lastly, but for Jensen's breach of the option contract, Miga would have suffered no loss. Thus, there was a causal connection between the breach and Miga's lost profits.

The evidence is legally and factually sufficient to support the jury's lost profits finding. Therefore, we overrule Jensen's third issue. We also overrule Jensen's fifth issue because the trial court did not err in admitting evidence of Miga's lost

profits, which included the stock's increase in value from the time of breach until the time of trial.

### 4. Trial Amendment was Proper

In his fourth issue, Jensen asserts the trial court abused its discretion by granting Miga a trial amendment regarding lost profits. Trial amendments should be freely granted to conform the pleadings to the evidence and the jury findings. *See* Tex.R. Civ. P. 66. A trial court has no discretion to deny a trial amendment unless the moving party shows surprise or prejudice. *See* Tex.R. Civ. P. 63, 66; *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990). When a new claim is supported by evidence that supports previously pleaded claims, no surprise or prejudice exists. *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). Surprise or prejudice is shown only when the trial amendment pleads a new claim that "reshapes" the case. *See Price v. Short*, 931 S.W.2d 677, 685–86 (Tex.App.—Dallas 1996, no writ).

Miga's live pleadings at the time of trial sought damages for the increase in value of the PGE stock after the breach of the option contract. Thus, the trial amendment did not reshape the case, but merely relabeled the damages that Miga sought. Furthermore, Jensen filed both a motion in limine and a trial brief seeking to exclude any evidence of the PGE stock's increase in value after the date of breach. Thus, Jensen was on notice of the lost profits claim. Because Jensen was not surprised or prejudiced by the trial amendment, we overrule Jensen's issue four.

### V. CONTRACT DAMAGES RESULTED IN DOUBLE RECOVERY

In his sixth issue, Jensen asserts that the trial court gave Miga an impermissible double recovery because in its judgment, it awarded Miga the value of the PGE stock at two different points in time. According to Jensen, this resulted in a greater recovery than Miga would have realized if Jensen had performed the contract.

Texas law does not permit a double recovery. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex.1995). Damages for breach of contract place the injured party, as nearly as possible, in the position he would have occupied had the defaulting party performed the contract, but nothing more. *See Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Thomas C. Cook, Inc. v. Rowhanian*, 774 S.W.2d 679, 686 (Tex.App.—El Paso 1989, writ denied). Thus, a prevailing party must elect between alternative measures of damages and, when he fails to do so, the trial court should render the judgment affording the greatest recovery. *See Parkway Co.*, 901 S.W.2d at 441.

In question 11, the jury was asked to determine (a) the difference between the cost to exercise the stock option and the value of the stock on the date of Miga's resignation, and (b) Miga's lost profits that were the natural, probable, and foreseeable consequence of Jensen's breach of the option contract. The jury answered $1,034,400 and $17,775,686, respectively. The trial court added both of the jury's answers together and, in its judgment, awarded Miga $18,810,086 in contract damages.

According to Jensen, the stock value at the time of trial ($17,775,686) necessarily included the stock value at the time of Miga's resignation ($1,034,400). Thus, he claims the trial court erred by adding those two amounts together and giving Miga more in damages than he was entitled to under the contract. We agree.

Because Miga failed to make an election, the trial court should have awarded contract damages only for lost profits because that measure of damages affords the greater recovery. We sustain that portion

of issue six complaining about a double recovery and hold that Miga was entitled to only $17,775,686 in contract damages.

## VI. PREJUDGMENT INTEREST AWARD INEQUITABLE

 In his sixth issue, Jensen also claims that including the stock's appreciated value in calculating prejudgment interest gives Miga an inequitable windfall. The trial court awarded $4,486,385.86 in prejudgment interest, which was based on the entire $18,810,086 amount awarded for contract damages.

 Where no statute controls the award of prejudgment interest, as in this case, the decision to award prejudgment interest is left to the sound discretion of the trial court. *See Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554 (Tex.1985), *overruled on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 533 (Tex. 1998); *City of Port Isabel v. Shiba,* 976 S.W.2d 856, 861 (Tex.App.—Corpus Christi 1998, pet. denied) (op. on reh'g). The trial court is to make this decision relying upon equitable principles and public policy. *See City of Port Isabel,* 976 S.W.2d at 861; *Spangler v. Jones,* 861 S.W.2d 392, 398–99 (Tex.App.—Dallas 1993, writ denied) (citing *Cavnar,* 696 S.W.2d at 552, 554).

 The purpose of prejudgment interest is to fully compensate the plaintiff by providing additional damages for the lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *See Kenneco,* 962 S.W.2d at 529; *Cavnar,* 696 S.W.2d at 552. It is not intended to punish the defendant. *See Cavnar,* 696 S.W.2d at 552.

In this case, the prejudgment interest award is inequitable. The PGE stock appreciated so greatly after the time of the breach that the lost profits award compensated Miga for the lost use of his money. It would be unfair to allow Miga a windfall by allowing him to recover both the appreciation in stock value from the date of the breach and prejudgment interest. *See Miller v. Kendall,* 804 S.W.2d 933, 945 (Tex.App.—Houston [1 st Dist.] 1990, no writ) (trial court did not abuse its discretion by denying prejudgment interest when stock price greatly appreciated after time of injury); *see also Kenneco,* 962 S.W.2d at 532 (criticizing *Cavnar* for allowing overcompensation by awarding plaintiff a larger recovery in interest than he could have received investing the money himself).

We sustain that portion of issue six asserting that the prejudgment interest award is inequitable. We hold that Miga is entitled to recover prejudgment interest only for the time period between trial and entry of the judgment.

## VII. CONCLUSION

Because we conclude that this is a breach of contract case, not a fraud case, we affirm the trial court's judgment notwithstanding the verdict, which disregarded the jury's fraud and punitive damages findings. We reverse the trial court's award of $18,810,086 contract damages because this amount includes a double recovery in the amount of $1,034,400. We render judgment in the amount of $17,775,686, which represents Miga's lost profits as a result of Jensen's breach of contract. We also reverse the trial court's award of prejudgment interest on the appreciated stock price and remand to the trial court for a determination of prejudgment interest for the time period between the dates the verdict was rendered and the judgment was entered.