Dismissed in Part, Affirmed in Part,
Reversed and Rendered in Part, and Opinion filed October 7, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00523-CV



Abatement
Incorporated, Alan Manring, and Gary Laughlin,

Appellants 

v.

Kyle Williams, Appellee 



On Appeal from
the 127th District Court

Harris County, Texas

Trial Court
Cause No. 2006-77415



 

OPINION

Appellants Abatement Incorporated and Alan Manring[1] appeal from
the trial court’s judgment, entered after a jury trial, holding them jointly and
severally liable for breach of an employment agreement with appellee Kyle
Williams.  In nine issues, Abatement and Manring argue that judgment was
improper because the contract was unenforceable under the statute of frauds,
the terms were too indefinite to give rise to a contract, the damages award was
improper and should be reduced, and there was no basis for holding Manring
individually liable.  We hold that the trial court erred in holding Manring
liable, and we reverse that portion of the trial court’s judgment and render
judgment that Williams take nothing against Manring.  We affirm the remainder
of the trial court’s judgment.

BACKGROUND

Because Abatement and Manring did not challenge the
legal or factual sufficiency of the evidence supporting the jury’s findings, we
give only a brief overview of the factual background.  In 2005, Abatement was
generally in the business of asbestos abatement.  Manring was Abatement’s
president, and Gary Laughlin was its vice president.  Williams was involved in
the construction business.  In August 2005, Hurricane Rita caused extensive
damage in portions of Texas.  Abatement had an opportunity to repair two
apartment complexes that had been seriously damaged, and it hired Williams and
his crew to assist in the work.  The terms of Williams’s employment, which were
not in writing, form the underlying basis of this lawsuit.  The parties agree
that Abatement promised to and did pay Williams $1,000 a week for his work.  Williams
claims that Abatement also promised to pay him a percentage of the profits of
any job he worked on.  Abatement denies making this promise.  Abatement fired
Williams in October 2006, allegedly for performance problems, without paying him
any profits.

Williams sued Abatement, Manring, and Laughlin for
breach of contract and fraud.  The case went to the jury on breach of contract,
and the jury found in favor of Williams.  Abatement and Manring now appeal.

ANALYSIS

A.     Statute
of Frauds

In its first issue, Abatement argues that the trial
court erred in submitting any jury questions regarding the agreement because enforcement
of the agreement is barred by the statute of frauds.  The statute of frauds
provides that an agreement “which is not to be performed within one year from
the date of making the agreement” is not enforceable unless it is in writing.  See
Tex. Bus. & Com. Code Ann. §
26.01(a), (b)(6) (West 2009).  For the one-year provision to apply, performance
within one year must be impossible.  See Chacko v. Mathew, No. 14-07-00613-CV,
2008 WL 2390486, at *3–4 (Tex. App.—Houston [14th Dist.] June 12, 2008, pet.
denied) (mem. op.); Cruikshank v. Consumer Direct Mortgage, Inc., 138
S.W.3d 497, 501 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  Whether an
agreement falls within the statute of frauds is a question of law.  Chacko,
2008 WL 2390486, at *3.

Abatement argues that the evidence establishes as a
matter of law that the agreement was for lifetime employment and thus was
incapable of being performed within a year.  We disagree.  Abatement points to
a transcript of a secret tape recording Williams made of a conversation between
himself and Manring before Williams was fired.  In the transcript, Williams
states that “part of [what we agreed on] was that I had security with the
company and that I didn’t have to worry about being fired.”  However, Williams
testified at trial that job security was talked about, not agreed upon, and
that the term of his employment was never defined.  Abatement agreed that
Williams’s term of employment was undefined.  Manring even stated in the
recorded conversation immediately after Williams made the comments about job
security, “Hey, no — nobody can guarantee nobody’s going to get fired.”  Thus,
no one advocated at trial that Williams had been promised lifetime employment. 


Abatement further points to testimony from Williams’s
wife stating her opinion that the agreement was “long term,” that it “never
[had] an ending time” but would be more than a year, and was like a marriage in
that you did not go into it with the expectation of it ending in six months.  But
she admitted this was just what she was “hoping” for, and hopes and expectations
are not enough to show performance within a year is impossible.  See Montgomery
County Hosp. Dist. v. Brown, 965 S.W.2d 501, 503–04 (Tex. 1998) (stating
that an employee’s hope to work as long as she wanted did not show an agreement
for many years of job security); Chacko, 2008 WL 2390486, at *3 (noting
that a contract does not fall within the statute of frauds one-year provision
based on “the lack of any expectation that performance will be completed within
a year”).  

This evidence shows nothing more than an at will
employment situation with an indefinite term of employment, and such an agreement
does not fall within the one-year provision of the statute of frauds.  See
Montgomery County, 965 S.W.2d at 503 (holding that “[a]n employment
contract for an indefinite term is considered performable within one year” and
that vague, indefinite, and general comments cannot create a definite term of
employment).  Thus, the evidence did not establish as a matter of law, or even
create a fact issue, that that the agreement was incapable of being performed
within one year.  Rather, the statute of frauds does not apply as a matter of
law.  Therefore, the trial court did not err in submitting jury questions
regarding the agreement.  We overrule Abatement’s first issue.

B.     Certainty
of Terms

In its second issue, Abatement argues that the trial
court erred in submitting any issues to the jury regarding the agreement
because the terms of the agreement are too uncertain to be enforced.  To be
legally enforceable, a contract must be sufficiently definite in its material
terms so that a court can understand what the promisor undertook.  See T.O.
Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992); Playoff
Corp. v. Blackwell, 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet.
denied).  A contract is sufficiently definite if a court is able to determine
the material legal obligations of the parties.  See T.O. Stanley, 847
S.W.2d at 221; Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.,
264 S.W.3d 892, 899 (Tex. App.—Fort Worth 2008, no pet.).  Each contract must
be considered individually to determine which terms are material.  T.O.
Stanley, 847 S.W.2d at 221; Inimitable Group, 264 S.W.3d at 899.  Whether
an agreement fails for indefiniteness is a question of law.  Playoff Corp.,
300 S.W.3d at 455; Inimitable Group, 264 S.W.3d at 899.

Abatement asserts that the contract is too indefinite
in several ways.  Abatement points to testimony from Williams showing that he
was unclear initially whether he was contracting with Abatement or with Next
Level Construction, which was an assumed name for Abatement at that time.  Assuming
without deciding that the distinction between contracting with a company or its
assumed name is somehow material, the issue of who the parties to the contract were
was resolved by the jury’s finding that Abatement and Williams agreed that
Williams would be paid a percentage of profits.  Abatement does not challenge
this jury finding on appeal, and unchallenged jury findings are binding.  See
Solares v. Solares, 232 S.W.3d 873, 880 (Tex. App.—Dallas 2007, no pet.); Bunton
v. Bentley, 176 S.W.3d 1, 16 (Tex. App.—Tyler 1999), remanded on other
grounds, 94 S.W.3d 561 (Tex. 2002).  Abatement also complains that the
contract does not specify its duration or how it would be terminated, but that
is the very definition of an at will agreement and does not render an agreement
unenforceable.  See Montgomery County, 965 S.W.2d at 502 (stating that
at will employment agreements can be terminated for good, bad, or no cause); Inimitable
Group, 264 S.W.3d at 899 (finding lack of duration term did not render
contract unenforceable).

Abatement next insists that the failure to define how
profits are to be calculated is fatal to the agreement.  However, there is no
evidence that the particular method of calculating profits was important to the
parties at the time of the agreement.  Cf. Playoff Corp., 300 S.W.3d at
456–57 (finding that method of calculating “fair market value” was material
because parties had contemplated a specific formula to be determined by future
negotiation).  Undefined contractual terms should be interpreted according to
common usage, and so doing does not render the contract unenforceable.  See
Miga v. Jensen, 25 S.W.3d 370, 376 (Tex. App.—Fort Worth 2000) (“Contract
terms that at first appear to be uncertain ‘are often readily made clear and
plain by the aid of common usage and reasonable implications of fact.’”
(quoting Bendalin v. Delgado, 406 S.W.2d 897, 900 (Tex. 1966))), rev’d
in part on other grounds, 96 S.W.3d 207 (Tex. 2002); see also Heritage Res.,
Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996) (“We give
[contractual] terms their plain, ordinary, and generally accepted meaning
unless the instrument shows that the parties used them in a technical or
different sense.”).  Abatement emphasizes other terms not defined in the
contract, such as what actions by Williams trigger his right to payment or how
disputes are to be resolved, but not every detail must be spelled out in the
contract.  The contract, based on undisputed evidence and unchallenged facts
found by the jury, was for Williams to work for Abatement on an at will basis
for a weekly salary and a percentage of the profits of each job.  These
contractual terms are specific enough for the parties to understand their
material obligations.  See T.O. Stanley, 847 S.W.2d at 221; Inimitable
Group, 264 S.W.3d at 899.  We overrule Abatement’s second issue.

C.    Reduction
of Damages Award

In its third issue, Abatement argues that the damages
award should be modified to reflect payments Abatement made to Williams during
his employment.  In addition to his weekly salary, Abatement made two payments
to Williams.  First, Abatement gave Williams $2,000, and all parties agree that
this was a loan Williams had requested to help pay his bills.  Abatement later
gave Williams an additional $7,055.  The parties disagree about the reason for
this payment.  Abatement maintains it was a second loan while Williams insists
the money was an advance on the profits he would be owed when a certain job was
complete.  Abatement did not file a counterclaim against Williams for repayment
or request repayment in any form.  Abatement never argued to the court or the
jury that these payments were profits and in fact argued they were loans and
had nothing to do with payment of profits.  On appeal, Abatement argues that
the damages award for unpaid profits should be reduced pursuant to these prior
payments.  Payment is an affirmative defense that must be pleaded and proven by
an accounting.  See Tex. R. Civ.
P. 94–95; F-Star Socorro, L.P. v. City of El Paso, 281 S.W.3d
103, 107–08 (Tex. App.—El Paso 2008, no pet.).  Abatement never pleaded
payment, and thus the issue is waived.  See F-Star, 281 S.W.3d at 107–08. 
We overrule Abatement’s third issue.

D.   
Individual Liability

In his fifth issue,
Manring argues that the trial court erred in submitting a question to the jury
that allowed the jury to find him individually liable under the Texas Labor
Code for Abatement’s failure to pay Williams profits.  Williams concedes that
Manring is not directly liable for breach of contract and is not liable under a
theory of piercing the corporate veil.[2] 
The only way Williams seeks to hold Manring individually liable for unpaid
profits is under chapter 61 of the Labor Code.

Chapter 61 of the Labor Code governs an employer’s
obligation to pay wages to employees and provides criminal penalties for
employers who violate the statute.  See Tex. Lab. Code Ann. §§ 61.011–.020 (West 2006); see also
Igal v. Brightstar Info. Tech. Group, 250 S.W.3d 78, 81–82 (Tex. 2008).  It
defines “employer” as a person “who employs one or more employees” or “who acts
directly or indirectly in the interests of an employer in relation to an
employee.”  Id. § 61.001(4).  In the jury charge, after the jury
answered questions regarding the agreement between Abatement and Williams and
the amount of profits promised and made, the jury was asked “Did [Manring] act
directly or indirectly in the interest of [Abatement] in relation to
[Williams]?”  The jury answered “yes,” and based solely on this answer, the
trial court imposed joint and several liability on Abatement and Manring[3] for the full
amount of the judgment.  In doing so, the trial court erred.

Chapter 61, part of the “Payday Law,” provides an
alternative remedial scheme for workers who have been denied wages.  See
Igal, 250 S.W.3d at 87; Hull v. Davis, 211 S.W.3d 461, 464 (Tex.
App.—Houston [14th Dist.] 2006, no pet.).  Rather than filing a breach of
contract lawsuit in court, a worker can file a wage claim with the Texas
Workforce Commission (TWC).  See Tex.
Lab. Code Ann. § 61.051 (West Supp. 2009).  This provides a streamlined
process for obtaining relief to workers with smaller claims that might be too
cumbersome to pursue in court.  See Igal, 250 S.W.3d at 82, 87; Hull,
211 S.W.3d at 464.  Thus, a worker has a choice either to file an
administrative claim with the TWC or a common law breach of contract claim in
district court.  Igal, 250 S.W.3d at 82; Hull, 211 S.W.3d at 464. 
Williams filed a breach of contract lawsuit rather than a wage claim with the
TWC.  However, he sought liability against Manring based on the definition of
employer provided in chapter 61.

Chapter 61 specifically states that the definitions,
including the definition of employer, apply “[i]n this chapter.”  Tex. Lab. Code Ann. § 61.001.  Nothing
in chapter 61 indicates any intent to change the common law and import this
definition into common law proceedings.  Williams insists that a suit for
failure to pay wages is both a common law breach of contract suit and a chapter
61 suit.  This is incorrect.  Common law claims and TWC claims are distinct remedial
schemes, and a litigant must choose which one to pursue.  See Igal, 250
S.W.3d at 87–88, 92 (describing the two remedial schemes and stating that “the
claimant selects which horse to ride”).  Williams argues that it is illogical
that a person could be liable as an “employer” under the chapter 61 definition
of employer in an administrative proceeding before the TWC but not be liable as
an “employer” in a breach of contract suit based on the same conduct pending in
district court.  This argument fails because TWC claims and court-based actions
differ in many other significant ways as well.  For example, a TWC claim is
subject to a 180-day limitations period while a breach of contract claim is
subject to a four-year limitations period.[4]
 Additionally, penalties can be recovered in a TWC claim but not in a breach of
contract claim; in contrast, attorney’s fees can be recovered in connection
with a breach of contract claim but not in a TWC claim.[5]  It was the
legislature’s choice to provide a different remedial scheme.  Furthermore, this
is no different than other situations in the employment context where the definition
of employer varies across many causes of action and provisions of the Labor
Code.  See, e.g., Alcala v. Tex. Webb County, 620 F. Supp.
2d 795, 803 (S.D. Tex. 2009).

Williams asserts that an employee can bring a chapter
61 claim in district court because violation of a statute “normally” gives rise
to a private cause of action.  Williams is mistaken.  A cause of action may be
implied only when a legislative intent to do so appears in the statute.  Brown
v. De La Cruz, 156 S.W.3d 560, 567 (Tex. 2004).  We apply a strict rule of
construction to statutory enforcement schemes and imply causes of action only
when the legislative intent is clear from the language of the statute.  See Witkowski
v. Brian, Fooshee & Yonge Props., 181 S.W.3d 824, 831 (Tex. App.—Austin
2005, no pet.); see also Brown, 156 S.W.3d at 563, 566.  Chapter 61 provides
a detailed administrative enforcement scheme and allows the possibility for
enforcement by the attorney general, and nothing in language of chapter 61
shows any intent to also allow a private right of action.  Moreover, another
portion of the Payday Law, chapter 62, specifically provides for a private
cause of action for failure to pay minimum wages.[6]  See
Tex. Lab. Code Ann. §§ 62.201–.205
(West 2006).  The legislature’s express inclusion of a private right of action
in chapter 62 and omission of that language in chapter 61 strongly suggests
that the legislature did not intend a private right of action under chapter
61.  See Touche Ross & Co. v. Redington, 442 U.S. 560, 571–72 (1979)
(finding no private cause of action for statute “flanked by provisions of the
[act] that explicitly grant private causes of action” and noting that “when
Congress wished to provide a private damage remedy, it knew how to do so and
did so expressly”); Brown, 156 S.W.3d at 568 (“[W]hen the Legislature
includes a right or remedy in one part of a code and omits it in another, that
may be precisely what the Legislature intended.”); Seidner v. Citibank
(S.D.) N.A., 201 S.W.3d 332, 337 (Tex. App.—Houston [14th Dist.] 2006, pet.
denied) (“Legislative express provision of certain specific remedies strongly
suggests that it did not intend to impliedly authorize other remedies.”).

Williams insists that a comparison to federal law
supports his theory.  The Fair Labor Standards Act (FLSA) and chapter 61 have nearly
identical definitions of employer.  Compare 29 U.S.C. § 203(d) (2006), with
Tex. Lab. Code Ann. § 61.001(4)(B). 
Though Williams cites cases in which individuals have been found liable for
FLSA violations, these cases involve failure to pay overtime or minimum wages. 
See, e.g., Lambert v. Ackerley, 180 F.3d 997 (9th Cir. 1999); Donovan
v. Agnew, 712 F.2d 1509 (1st Cir. 1983).  The FLSA provides a private cause
of action for failure to pay minimum wages and overtime pay; unlike chapter 61,
it does not provide a private cause of action for other failures to pay wages,
such as the one Williams alleges here.  See 29 U.S.C. §§ 206, 207,
216(b) (2003 & Supp. II 2008); Villa v. Waters, Civil Action No. SA-09-CV-0113
XR, 2009 WL 1650482, at *1–2 (W.D. Tex. June 11, 2009) (concluding employee did
not state an FLSA claim because her allegations involved failure to pay wages
rather than unpaid minimum wages or overtime pay).  Thus, Williams misplaces
his reliance on the FLSA in this context.

We conclude that the trial court erred in using the
definition of employer found in chapter 61 as a basis for finding Manring
individually liable for Abatement’s failure to pay profits to Williams.  We
sustain Manring’s fifth issue.[7]

CONCLUSION

The trial court erred in holding Manring individually
liable for Abatement’s failure to pay Williams profits.  Thus, we reverse the
portion of the judgment against Manring and render judgment that Williams take
nothing against Manring.  We affirm the remainder of the trial court’s
judgment.

 

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

 

Panel consists of Chief Justice Hedges
and Justices Yates and Boyce.









[1]
Gary Laughlin filed a notice of appeal but never filed an appellate brief or
took any steps to pursue his appeal.  Therefore, we dismiss his appeal for want
of prosecution.  See Tex. R. App.
P. 42.3(b).





[2]
Therefore, we need not address Manring’s first through fourth issues regarding
the existence and enforceability of the contract.





[3]
The jury also answered a similar question in the affirmative regarding
Laughlin, and the trial court imposed joint and several liability as to
Laughlin as well.  Because Laughlin’s appeal has been dismissed for want of
prosecution, we do not address the propriety of joint and several liability as
to Laughlin.





[4]
Compare Tex. Lab. Code Ann.
§ 61.051(c), with Tex. Civ. Prac.
& Rem. Code Ann. § 16.004 (West 2002).





[5]
Compare Tex. Lab. Code Ann.
§ 61.053, with Tex. Civ. Prac.
& Rem. Code Ann. § 38.001(8) (West 2008).





[6]
There is no allegation in this case that Abatement failed to pay minimum wages,
and it is undisputed that Abatement paid Williams $1,000 a week.





[7]
We need not address Manring’s sixth issue regarding the amount of the damages
award because we have determined that Manring is not liable for any of it.